SANDRA D. HAUSER (admitted *pro hac vice*)
sandra.hauser@dentons.com
JEFFREY A. ZACHMAN (admitted *pro hac vice*)
jeffrey.zachman@dentons.com
SPENCER D. HAMILTON (admitted *pro hac vice*)
spencer.hamilton@dentons.com
MICHAEL J. DUVALL (SBN 276994)
michael.duvall@dentons.com
DENTONS US LLP
601 South Figueroa Street
Suite 2500
Los Angeles, CA 90017-5704
Telephone: 213 623 9300
Facsimile: 213 623 9924

Attorneys for Defendants METROPOLITAN LIFE INSURANCE COMPANY and MERCER HEALTH AND BENEFITS ADMINISTRATION, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONIT LARONE, Individually, as Trustee of the Gary Lang Trust; and on Behalf of the Class,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, a New York Corporation; MERCER HEALTH AND BENEFITS ADMINISTRATION, LLC, a Delaware Corporation; and DOES 1 through 10, Inclusive,<br><br>Defendants. | No. 2:21-cv-00995-AB-AGR<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO AMEND THE COURT'S SCHEDULING ORDER TO PRIORITIZE DISCOVERY AND RESOLUTION OF THE NAMED PLAINTIFF'S CLAIMS**<br><br>Date: August 12, 2022<br>Time: 10:00 a.m.<br>Dept.: Courtroom 7B<br><br>Judge: Hon. André Birotte Jr. |

CASE NO. 2:21-cv-00995     1     DEFENDANTS' MPA IN SUPPORT OF MOTION TO AMEND SCHEDULING ORDER

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................... 1

II. ARGUMENT ......................................................................................... 4

    A. Bifurcation Promotes Efficiency by Potentially Alleviating the Burden of Expansive Class Discovery That Is Moot Because Plaintiff Cannot Assert a Claim. .................................................... 4

        1. Defendants Sent Compliant Notices to Mr. Lang. ............ 8

        2. Mr. Lang Knew When and How to Pay Premiums. ........... 9

        3. Plaintiff's Vague Waiver Claim Also Fails. ..................... 10

        4. Plaintiff's Claims Are Unrelated to the Putative Class Members' Claims, and Thus Bifurcation Is Particularly Appropriate. ..................................................................... 11

    B. Bifurcation Will Not Prejudice Plaintiff. ................................... 12

III. CONCLUSION ................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bahamas Surgery Ctr. v. Kimberly-Clark Corp.*,
    820 F. App'x 563 (9th Cir. 2020) .................................................................................. 3

*Bassil v. Webster*,
    No. 2:20-CV-05099-SB, 2021 WL 1235258 (C.D. Cal. Jan. 15, 2021) ..................... 4, 5, 6, 13

*Calmar, Inc. v. Emson Research, Inc.*,
    850 F. Supp. 861 (C.D. Cal. 1994) ................................................................................. 4

*Dunne v. JPMorgan Chase Bank, N.A.*,
    No. CV 13-00919 DDP, 2014 WL 5147961 (C.D. Cal. Oct. 14, 2014) .......................... 10, 11

*Ellingson Timber Co. v. Great N. Ry. Co.*,
    424 F.2d 497 (9th Cir. 1970) ........................................................................................... 4

*General Patent Corp. v. Hayes Microcomputer*,
    No. SA CV 97-429-GLT ANX, 1997 WL 1051899 (C.D. Cal. Oct. 20, 1997) ................. 6

*Little v. City of Seattle*,
    863 F.2d 681 (9th Cir. 1988) ........................................................................................... 5

*Moreno v. NBCUniversal Media, LLC*,
    No. CV 13-1038 BRO, 2013 WL 12123988 (C.D. Cal. Sept. 30, 2013) .......................... 4

*Vitolo v. Bloomingdale's, Inc.*,
    No. CV 09-07728 DSF, 2010 WL 114631 (C.D. Cal. Dec. 7, 2010) .............................. 3

*Wixen Music Publishing, Inc. v. Triller, Inc.*,
    No. 2:20-CV-10515-JVS-AFMx, 2021 WL 4816627 (C.D. Cal. Aug. 11, 2021) .... 5, 6, 12, 13

*Zahedi v. Miramax, LLC*,
    No. CV 20-4512-DMG (Ex), 2021 WL 3260603 (C.D. Cal. Mar. 24, 2021) .................. 6

**Statutes**

California Insurance Code Section 10113.71 .......................................................................... 1

California Insurance Code Section 10113.72 .......................................................................... 1

**Other Authorities**

Rule 12 ..................................................................................................................................... 11

Rule 42(b) ................................................................................................................................. 4

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Defendants Metropolitan Life Insurance Company ("MLIC") and Mercer Health and Benefits Administration, LLC ("Mercer") (collectively, "Defendants") submit this memorandum of points and authorities in support of their motion to amend the Court's Scheduling Order to prioritize discovery and resolution of the named Plaintiff's claims. A proposed amended Order is submitted herewith.

## I.     INTRODUCTION

Defendants respectfully request modification of the Court's Scheduling Order (Dkt. 60) to phase or bifurcate the remaining discovery in this case. The first phase, already ongoing and nearing completion, should be limited to discovery regarding the named Plaintiff's individual claims, as well as a few already agreed-upon and outstanding discovery items described below ("Phase I"). Most of this discovery already has been completed, or is scheduled for completion within the next month. At the conclusion of Phase I, Defendants (and potentially Plaintiff) would promptly move for summary judgment on Plaintiff's individual claims.

As discovery has revealed, Plaintiff's claims fail for a very simple reason: Defendants complied with all applicable requirements of California Insurance Code Section 10113.71 by (1) providing a 60-day grace period clearly set forth on the face of the certificate and (2) providing the insured notice of pending lapse at least 30 days before lapsing coverage and within 30 days of the missed premium payment.[1] The facts do not and cannot support a breach of contract claim based on alleged violations of the Statutes, nor any UCL claim either. To the extent Plaintiff's facts raise *any claim at all* (which Defendants deny), that claim is based on specific communications between the insured, Gary Lang, and Defendants; it is entirely unmoored from the Statutes, notwithstanding her counsel's attempt to

---

[1] As the Court already has ruled, Section 10113.72 does not apply to group life insurance, including the policy and certificate under which Plaintiff seeks to recover. (Dkt. 62 at 10.) Sections 10113.71 and 10113.72 are referenced collectively as "the Statutes."

frame it otherwise. This case thus turns on facts specific to Plaintiff and can be quickly and easily decided by this Court.

Defendants set out background information in this motion solely to illustrate this point for the Court: There are clear threshold issues that, in fairness, should be decided on summary judgment prior to the remainder of this very broad case progressing. Defendants are *not* asking the Court to rule on any merits issue at this juncture—but ask solely that the Court permit Defendants to bring, and for this Court to rule upon, their planned motion for summary judgment, prior to Phase II commencing.

If any claim survives summary judgment, and if this Court finds a nexus between that claim and the Statutes, the Parties would then conduct discovery regarding the remainder of MLIC's group and individual life insurance policies and move forward on Plaintiff's motion to certify a class ("Phase II").

Defendants bring this motion in response to the Court's recent ruling on Plaintiff's motion for leave to amend the First Amended Complaint ("FAC"). (Dkt. 87.) The addition of individual life insurance policies to the putative class definition drastically alters the scope of this case and complexity of disputed issues, particularly in comparison to Plaintiff's likelihood of success on her individual claims. Indeed, MLIC's procedures, administrative systems, policyholder data and witnesses are completely different for individual and group life insurance. (Dkts. 73, 73-1.) While the Court found that the *amendment* would not substantially prejudice Defendants (Dkt. 87 at 7-9), expansive class discovery into MLIC's individual life insurance business, including the production of data on potentially tens of thousands of individual life insurance policies, would significantly prejudice Defendants where, as here, the facts clearly show that Plaintiff cannot assert a claim herself. Moreover, whatever claim Plaintiff may believe she has, it is not based on the Statutes, the sole thing that creates any nexus to the remainder of discovery. It will also burden the Court. Bifurcation would focus this case and potentially avoid

the expense and burden of extensive class discovery across wildly different policies of insurance, blocks of business, and administrative systems that will be rendered moot by summary judgment on Plaintiff's individual claim. Thus, phasing this case as Defendants suggest is the most fair and efficient way for all Parties, and the Court, to adjudicate this case.

Finally, the proposed bifurcation will not prejudice Plaintiff. Her claims—reliant on a group life insurance policy—are unconnected to the expansion of the putative class definition. She can present issues relevant to her individual claims and this Court can determine whether they can survive before requiring the Parties to wade into discovery regarding individual life insurance policies, which raises entirely different factual and legal issues that will not and cannot assist in with the Court's evaluation of her individual claims. Moreover, discovery regarding Plaintiff's individual claims and the group policy pursuant to which Mr. Lang's certificate was issued (the Group Policy related to Multiple Employer Trust No. 5 (the "Group Policy"))[2] has been underway for several months and can be quickly completed. Discovery into MLIC's other group life insurance business, unrelated to the Group Policy and Trust of which Mr. Lang's coverage was a part, and individual life insurance business (both potentially relevant only to a class certification motion) has yet to begin. The latter would be delayed *only* until the Court can determine the legal sufficiency of Plaintiff's claims. Absent a plaintiff with a viable claim connected to the purported class claims, this case cannot move forward at all. *E.g.*, *Bahamas Surgery Ctr. v. Kimberly-Clark Corp.*, 820 F. App'x 563, 565-66 (9th Cir. 2020); *Vitolo v. Bloomingdale's, Inc.*, No. CV 09-07728 DSF

---

[2] MLIC issued the Group Policy to the Trustee of Multiple Employer Trust No. 5 (the "Trust") in 1992. The Trustee is the sole Group Policyholder. Mr. Lang's former employer, Fox, Inc., is one of more than 60 different employers who consented to and joined the Trust. Each of these employers has a multitude of certificate holders. Defendants are close to producing putative class data for those employers' certificate holders—to the extent they enrolled in California or as to which records reflect California as their last-known residence—whose coverage lapsed after January 1, 2013 (the date the Statutes were enacted). Defendants estimate that data will cover more than 4,000 certificates.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

(PJWx), 2010 WL 114631, at *3 (C.D. Cal. Dec. 7, 2010). Defendants' motion thus does not ask the Court to limit or prevent Plaintiff from taking any discovery, but only to set an efficient and appropriate schedule for doing so.

## II.   ARGUMENT

Under Rule 42(b), courts have "power to limit discovery to the segregated issues." *Bassil v. Webster*, No. 2:20-CV-05099-SB (PDx), 2021 WL 1235258, at *1 (C.D. Cal. Jan. 15, 2021) (quoting *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970)). "One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Id.* Among the factors to consider in deciding whether to bifurcate are the "complexity of the issues, factual proof, risk of jury confusion, difference between the separated issues, and the chance that separation will lead to economy in discovery." *Moreno v. NBCUniversal Media, LLC*, No. CV 13-1038 BRO (VBKx), 2013 WL 12123988, at *2 (C.D. Cal. Sept. 30, 2013) (quoting *Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp. 861, 866 (C.D. Cal. 1994)). "The Court should also consider whether bifurcation will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay." *Moreno*, 2013 WL 12123988, at *2.

### A.   Bifurcation Promotes Efficiency by Potentially Alleviating the Burden of Expansive Class Discovery That Is Moot Because Plaintiff Cannot Assert a Claim.

Amendment of the FAC to include individual life insurance drastically alters the scope and burden of class discovery in this case.[3] Defendants have provided written discovery responses, document productions, and three witnesses for

---

[3] Defendants set forth this burden in response to Plaintiff's Motion to Amend. (Dkts. 73, 73-1.) Although the Court held that the burden of increased discovery was not sufficient prejudice to deny the Motion (Dkt. 87), Defendants submit that it more than justifies this Court's exercise of discretion to bifurcate discovery.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

deposition (with two more scheduled) as to <u>group</u> life insurance. This discovery has not been limited to the named Plaintiff but pertains to the Group Policy and Trust of which her claimed coverage is part. But MLIC's <u>individual</u> life policies are administered separately. They involve different administrative systems, processes and personnel. (Doc. 73-1, ¶¶ 11-12.) And, importantly, Plaintiff's amendment incorporates an entirely new, large and disparate population of putative class members as to whom Plaintiff seeks individual policy-level data.

As a result, Plaintiff's amendment resets the clock and creates a *de facto* second case for purposes of discovery—requiring separate document and policyholder data collection, written discovery, and witness testimony on entirely new categories of life insurance products (including term life, universal life, whole life products of various types of vintages) that implicate, among other things, different premium, notice, lapse, and grace procedures. As a practical matter, the Parties must begin discovery on this "second case" anew.

The new discovery burden imposed by Plaintiff's amendment, however, is sensibly mitigated by exercising the Court's discretion to bifurcate discovery and determine the viability of Plaintiff's claim as a threshold matter. *E.g.*, *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Exercising that discretion here, and thus allowing the Parties to focus on individual discovery in Phase I *first*, ensures that all Parties'[4] resources (and judicial resources) are not wasted on expansive class discovery that will be moot if Plaintiff's claims are dismissed on summary judgment, or even narrowed in a way that clarifies the issues in this case. *See, e.g.*, *Wixen Music Publishing, Inc. v. Triller, Inc.*, No. 2:20-CV-10515-JVS-AFMx, 2021 WL 4816627, at *2 (C.D. Cal. Aug. 11, 2021) ("One favored purpose of bifurcation is to avoid a difficult question by first dealing with an easier, dispositive issue.").

---

[4] As discussed further below, bifurcation does not prejudice Plaintiff, and would equally conserve Plaintiff's resources spent in class discovery unmoored from her individual claims. *See Bassil*, 2021 WL 1235258, at *2-3.

Courts in this District regularly bifurcate discovery for just this reason. *See id.*; *see also Zahedi v. Miramax, LLC*, No. CV 20-4512-DMG (Ex), 2021 WL 3260603 (C.D. Cal. Mar. 24, 2021); *Bassil*, 2021 WL 1235258; *General Patent Corp. v. Hayes Microcomputer*, No. SA CV 97-429-GLT ANX, 1997 WL 1051899 (C.D. Cal. Oct. 20, 1997). In *Bassil*, Judge Blumenfeld explained:

> "[T]he Court finds that bifurcation would promote judicial economy and potentially save the parties significant cost. Bifurcation would enable Defendants to move for summary judgment before the parties engage in onerous damages discovery that potentially generates disputes requiring judicial resolution. If the motion is granted, bifurcation would have benefited everyone—the parties are spared needless cost and the Court avoids potential disputes about damages."

*Bassil*, 2021 WL 1235258, at *2-3.

Bifurcation is particularly appropriate here for two additional reasons. First, it is by far the most efficient way to schedule remaining discovery. Because individual discovery is near completion, Plaintiff's individual claim can be adjudicated on summary judgment soon. As discussed above, the Parties have already exchanged written discovery regarding Plaintiff's individual claims, and Plaintiff is scheduled to be deposed on July 27, 2022. Defendants anticipate that they will file a motion for summary judgment (and Plaintiff may do the same) shortly thereafter. This case will therefore not be long delayed by completing Phase I first, particularly in comparison to the time needed to complete class discovery (and particularly data discovery) relevant to individual life insurance policies that practically constitute an entirely new case that has yet to begin.

Second, Phase II class discovery will be moot in this case because the undisputed facts will show that Plaintiff cannot assert an individual claim for a very simple reason: Defendants complied with Section 10113.71 as to Mr. Lang's

certificate. Plaintiff's breach of contract and bad faith claims—both of which rely on a violation of the Statutes—fail.

Specifically, the record will indisputably show that on October 30, 2018, Defendants sent Mr. Lang (Plaintiff's late ex-husband and the insured), a notice that his premium was due November 19, 2018. (Dkt. 52; Dkt. 52-1 at B009.) When Mr. Lang failed to make payment on or before that date, Defendants sent Mr. Lang a notice on December 5, 2018, stating that premium was overdue and unpaid, and also notifying him that "[i]f payment is not received your coverage will lapse on 02/01/2019." (Dkt. 52; Dkt. 52-1 at C012; Declaration of Sandra D. Hauser, Ex. A, Deposition Transcript of Dennis Chartier ("Chartier Dep.") at 122:5-22, 124:10-19.) Defendants sent the December 5, 2018 notice within 30 days of the premium due date (November 19, 2018) *and* more than 30 days before the coverage lapsed on February 1, 2019.[5] (*See* Dkt. 52; Dkt. 52-1 at E018.)[6] Finally, and as the Court has already recognized, Mr. Lang's certificate included a 60-day grace period provision (Dkt. 62 at 2).

Thus, undisputed facts will demonstrate that Defendants complied with all three requirements of Section 10113.71—providing Mr. Lang at least a 60-day grace period (as set forth in his certificate) and timely notices as required by Section 10113.71(b). Plaintiff's claims fail for this simple reason.

To the extent Plaintiff contends that Mr. Lang did not receive Defendants' notices, that he was confused by them, or that Defendants' prior conduct waived

---

[5] Defendants also sent an additional reminder notice on January 4, 2019, that reiterated that if payment was not received coverage would lapse on February 1, 2019. (Dkt. 52; Dkt. 52-1 at D015.)

[6] When Mr. Lang failed to make payment, Defendants sent him a letter on February 5, 2019 notifying him that coverage had been terminated. (Dkt. 52; Dkt. 52-1 at E018.)

their right to terminate Mr. Lang's coverage, Plaintiff's claim fails. At bare minimum, the claim is not plausibly a claim based on the California Statutes.[7]

### 1. Defendants Sent Compliant Notices to Mr. Lang.

Any argument that Mr. Lang did not receive proper notices is unsupported by the evidence and legally irrelevant.

Mercer sent Mr. Lang the notices via first class mail, which is all the Statutes require. (Dkt. 52, ¶¶ 2, 5; Chartier Dep. at 64:23-65:18.) If there had been an address issue, it not only is legally irrelevant under the Statutes but the mailing would have been returned to Mercer as undeliverable or return to sender. (Dkt. 52, ¶ 4-6; Chartier Dep. at 61:15-63:7.) There is no evidence of that. Defendants' records do not reflect that any correspondence sent to Mr. Lang was marked undeliverable or return to sender. (Dkt. 52, ¶¶ 5-6.) Moreover, Mr. Lang lived at the same Redondo Beach address from 2005 until his death (Hauser Decl., Ex. B, Response No. 1), making any kind of purported mailing issue all the more unlikely.

Plaintiff's contention that Mr. Lang did not receive these notices (or that perhaps Mercer did not actually send them) simply because they were not found after his passing is baseless and cannot withstand summary judgment. In discovery, Defendants requested that Plaintiff provide all documents evidencing or relating to communications between Mr. Lang and Defendants. (Hauser Decl., Ex. C, Request Nos. 6, 8.) Plaintiff produced just three billing notices—even though Mr. Lang paid quarterly premiums, and was sent corresponding billing notices, for 17 years (Dkt. 62 at 2). That Plaintiff located only three such notices belies her contention that they were not sent.

---

[7] Importantly, and again, Defendants provide a summary of their arguments simply to illustrate the central point behind this request to bifurcate: There are clear threshold issues that in fairness should be decided by this Court prior to the rest of this very broad case progressing. Defendants are not asking the Court to rule on any of these issues, or to decide any merits question, at this juncture. Defendants request that the case be managed to enable them to bring, and for this Court to rule upon, their motion for summary judgment, prior to Phase II commencing.

### 2. Mr. Lang Knew When and How to Pay Premiums.

Mr. Lang paid quarterly premiums for 17 years. (Dkt. 62 at 2.) He knew how and when to pay his premium.[8]

Plaintiff nevertheless alleges that Mr. Lang may have been "confused" because he received notices on both December 5 and December 8, 2018. But the content of these notices belies Plaintiff's allegation. The December 5, 2018 notice clearly notifies Mr. Lang that payment was past due for the October 1, 2018 to January 1, 2019 coverage period—the relevant period in this case and the missed payment period that ultimately caused Mr. Lang's policy to lapse. (Dkt. 52-1 at C012.)

By contrast, the December 8, 2018 notice, clearly alerts Mr. Lang to a missed payment for the *subsequent* coverage period running from January 1, 2019 to April 1, 2019. Although Mr. Lang would have been obligated to make this payment by the end of the grace period as well, it is irrelevant to the lapse that is the subject of this case.

Moreover, the evidence shows that Mr. Lang called Defendants on several occasions to ask about his coverage and make premium payments by phone. Were he confused about the subsequent coverage period, he could and would have called again.

Finally, even if Mr. Lang had questions about his premium due date or amount, those questions do not create a Statutory violation. Section 10113.71(b) does not prescribe the form or content of the notices required thereunder. The notices Defendants sent plainly state that coverage will lapse for nonpayment of premium on February 1, 2019—the end of Mr. Lang's grace period and more than 60 days after premium was owed. (Dkt. 52-1 at C012, D015.) Plaintiff cannot

---

[8] Moreover, it is possible Mr. Lang affirmatively chose not to make the payment. The terms of Mr. Lang's divorce agreement with Plaintiff only required him to maintain the insurance and pay all premiums until February 4, 2018. (Hauser Decl., Ex. B, Response No. 2.) He met that obligation, paid two additional coverage periods beyond it, and then stopped paying thereafter.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

therefore assert that the notices were statutorily deficient simply by claiming that Mr. Lang was confused by them.  At the most, Plaintiff's claim is based on the individual communications Mr. Lang received and his subjective understanding of those communications.  As all Plaintiff's claims rely on the Statutes as a trigger, her claims fail.

### 3. Plaintiff's Vague Waiver Claim Also Fails.

Finally, Plaintiff contends that Defendants waived their right to terminate Mr. Lang's coverage because they had accepted late premium payments in the past.  But Plaintiff's claim fails for a simple reason: she has no evidence to support that bald allegation.  To establish waiver, Plaintiff must prove an "intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it."  *E.g.*, *Dunne v. JPMorgan Chase Bank, N.A.*, No. CV 13-00919 DDP (OPx), 2014 WL 5147961, at *3 (C.D. Cal. Oct. 14, 2014).  There is no evidence of such an intent.

Here, however, Plaintiff's waiver allegations rely entirely on the fact that MLIC allowed Mr. Lang to pay late on a single occasion because, as a result of the California wildfires, the California Department of Insurance ("DOI") provided him and certain other certificate holders residing in California a 30-day extension to pay premiums.  Thus, the grace period for Mr. Lang's third quarterly 2018 premium payment would otherwise have expired on October 1, 2018, but for the DOI directive providing him 30 additional days to make payment.  Mr. Lang did so on October 25, 2018 (within the 30-day extension period).  (Dkt. 52-1 at A001-007.)

Neither the DOI directive regarding wildfires, nor the October 25, 2018 payment, however, impacted Mr. Lang's obligation to make his *next* quarterly premium payment.  Defendants did not, and cannot, waive their right to insist on timely payment by complying with DOI directives regarding natural disasters.  Finally, as with her confusion claim, Plaintiff's waiver argument is irrelevant to any claim under the Statutes.

Defendants anticipated these facts and raised them in their Motion to Dismiss. (Dkt. 46 at 19-20.) However, when deciding that motion, the Court was required to take as true all of Plaintiff's factual allegations concerning the notices sent to Mr. Lang. (Dkt. 62 at 5-6.) Thus, under Rule 12, the Court declined to dismiss Plaintiff's contract claim because it was "premature at the pleading stage for the Court to delve into [those] facts." (*Id.* at 12-13.) The Court also declined to consider evidence presented by Defendants at the motion-to-dismiss stage, instead ruling on the pleadings alone. (*Id.* at 11-12 n.3.) But on summary judgment, the Court *can* consider evidence showing that Defendants complied with Section 10113.71 and can thus dispose of Plaintiff's claim by deciding that *single question*, thereby mooting the myriad issues raised by the newly expanded and differently situated putative class members. The opportunity to narrow the issues to a single question, and the clarity and strength of Defendants' argument on that question, weigh in favor of bifurcating discovery here, particularly where class discovery will implicate exponentially more—and more complex—issues that have nothing to do with Plaintiff's individual claims. Absent the named Plaintiff, the case must be dismissed.

**4.     Plaintiff's Claims Are Unrelated to the Putative Class Members' Claims, and Thus Bifurcation Is Particularly Appropriate.**

Finally, even if Plaintiff could assert some unidentified confusion claim (related to the unique cadence of Mr. Lang's notices) or waiver argument (related to Mr. Lang's unique prior payment history), those claims are different from the unnamed class-members' claims—all of which rely on a violation of the Statutes. This disparity weighs in favor of bifurcating discovery.

Because Plaintiff's claim relies on the timing of the communications Mr. Lang received, his alleged confusion related thereto, and his unique prior payment history, discovery regarding Plaintiff's individual claim does nothing to prove the putative class members' Statutory claims. Conversely, class data does nothing to

assist the Court in analyzing the viability of Plaintiff's claims.  For this independent reason, bifurcation is particularly appropriate here, even if Plaintiff's unique claims could withstand summary judgment—and they cannot.

### B.  Bifurcation Will Not Prejudice Plaintiff.

Bifurcation would not adversely affect Plaintiff or her claims.  First, and as discussed above, bifurcation will not unduly delay this case—particularly in relation to the time remaining to complete class discovery.  Phase I discovery is almost complete, while discovery regarding individual life insurance policyholders newly added to the putative class has not begun.  The summary judgment issues are simple and straightforward and briefing can be completed quickly while narrowing this dispute to a single issue, whereas class discovery will raise myriad issues and, particularly as to individual policy-level data, take significant additional time to complete.  Second, the proposed phasing will not impact Plaintiff's requested relief.  Plaintiff has no basis for injunctive relief because her husband's insurance coverage is no longer in force.  If Plaintiff found success on her individual claims, she would only be entitled to money damages—unaffected by this bifurcation.

Further, Defendants are not suggesting that discovery never can happen here.  Although discovery regarding the newly expanded class is burdensome, this Motion does not seek to prohibit Plaintiff's from taking whatever discovery may be proper following resolution of the individual issues on summary judgment.  Instead, Defendants merely ask that discovery be scheduled in the most efficient order—and taken when and if it is necessary.  If the Court finds that one of Plaintiff's individual causes of action can proceed beyond summary judgment, with a tie to the Statutes, Plaintiff can proceed with the remainder of class-wide discovery.  *See, e.g.*, *Wixen Music*, 2021 WL 4816627, at *4 (ordering bifurcation where prejudice was minimal because moving party was not requesting additional discovery, rather, "only that initial discovery that may foreclose later discovery proceed first.").  This

protects not only Defendants' and the Court's resources, but also Plaintiff's.[9] *See Bassil*, 2021 WL 1235258, at *2-3 ("If the motion is granted, *bifurcation would have benefited everyone*—the parties are spared needless cost and the Court avoids potential disputes about damages." (emphasis added)). Thus, Plaintiff is not prejudiced by bifurcating discovery here.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and bifurcate remaining fact discovery into two phases. Phase I should be limited to discovery into the named Plaintiff's individual claims. Phase II should commence only if one of Plaintiff's claims proceeds beyond this Court's ruling on summary judgment to the extent a Statutes-based claim survives.

Dated: July 13, 2022

Respectfully submitted,

DENTONS US LLP

By: ___/s/ Sandra D. Hauser_____
        Sandra D. Hauser

Attorneys for Defendants
METROPOLITAN LIFE INSURANCE COMPANY and MERCER HEALTH AND BENEFITS ADMINISTRATION, LLC

---

[9] Finally, the proposed bifurcation does nothing to impair Plaintiff's ability to establish her claims or oppose summary judgment. As Plaintiff acknowledges, her claims rise and fall on the unique nature of the Group Policy for which her late ex-husband held a certificate of insurance, stating that "the precise language of the policy at issue, the facts involving the type of employer, and other circumstances" all are relevant to her claims. (Doc. 65 at 4.) Plaintiff further admits that her SAC "does not change the previously alleged facts or claims" and that she "does not assert new claims." (Dkt. 75 at 4; *see also id.* at 9.) Thus, the expansion of the putative class definition to include individual life insurance policies has no effect on Defendants' forthcoming summary judgment motion.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300